**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| MYRA HICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )       1:20CV797 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant.[1] | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Myra Hicks, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 13, 15; see also Docket Entry 14 (Plaintiff's Memorandum), Docket Entry 16 (Defendant's Memorandum); Docket Entry 17 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1]  President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 196-208), alleging an onset date of January 1, 2016 (see Tr. 196, 203). Upon denial of those applications initially (Tr. 54-74, 99-106) and on reconsideration (Tr. 75-98, 112-30), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 131-33). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-53.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 11-23.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 194-95), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2016.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since January 1, 2016, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: inflammatory arthritis; Raynaud's syndrome; diabetes mellitus with peripheral neuropathy; undifferentiated connective tissue disease; and major depressive disorder.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

2

5. . . . [F]rom January 1, 2016 through August 30, 2017, [Plaintiff] had the residual functional capacity to perform medium work . . . except with occasional operation of hand and foot controls and no climbing of ladders, ropes, or scaffolds. However, beginning on September 1, 2017, . . . [Plaintiff] has the residual functional capacity to perform light work . . . except with an option to alternate to sitting for 10 minutes after every one hour of standing as long as she is not off task or away from the workstation. She should not climb ladders, ropes, or scaffolds nor operate foot controls. [She] could occasionally crawl, operate hand controls, and push/pull with the bilateral upper extremities. [She] could also frequently finger and handle bilaterally. [She] should have no exposure to extreme cold, but could have occasional exposure to vibration. [She] is further restricted to simple, routine tasks with few changes in a routine work setting.

. . .

6. From January 1, 2016 through August 30, 2017, [Plaintiff] was capable of performing past relevant work as a home attendant. This work did not require the performance of work-related activities precluded by [her] residual functional capacity from January 1, 2016 through August 30, 2017. Beginning September 1, 2017, [she] was unable to perform any past relevant work

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from January 1, 2016, through the date of this decision.

(Tr. 16-23 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

4

is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

_____

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

<h2 align="center">B. Assignments of Error</h2>

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to perform a function-by-function analysis of Plaintiff's contested and relevant abilities to stand and walk before arriving upon the RFC" (Docket Entry 14 at 4 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 17 at 1-3); and

2) "the ALJ's decision violates *Mascio[ v. Colvin*, 780 F.3d 632 (4th Cir. 2015)]" (Docket Entry 14 at 13 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 16 at 5-23.)

<h3 align="center">1. Function-by-Function Analysis</h3>

In Plaintiff's first issue on review, she contends that "[t]he ALJ erred by failing to perform a function-by-function analysis of

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

Plaintiff's contested and relevant abilities to stand and walk before arriving upon the RFC." (Docket Entry 14 at 4 (bold font and single-spacing omitted); see also Docket Entry 17 at 1-3.) In that regard, Plaintiff highlights her own statements (see Docket Entry 14 at 4-5 (citing Tr. 40-42, 44-45, 257-58, 261-62, 281)) as well as the medical evidence (id. at 10-13 (citing Tr. 336-37, 352, 355-56, 386, 417-18, 432, 440, 455-57, 467-71, 507, 547, 555, 603, 609, 653, 674, 707, 713-14, 752-55, 758, 760, 762-64, 773, 819-21)) that she believes supports greater limitations on her abilities to stand and walk, and argues that "[t]he ALJ . . . never explain[ed] *how* she arrived upon an option for [Plaintiff] to sit after a full hour of standing as opposed to only five minutes of standing as she testified, and [the ALJ] provide[d] no analysis for her finding that [Plaintiff] could walk for up to six hours during the workday with no restriction on her ability to do so at one time" (id. at 6 (emphasis in original)) contrary to controlling authority (see id. at 7 (citing Mascio, 780 F.3d at 639-40)).

Plaintiff additionally points out that the United States Court of Appeals for the Fourth Circuit "recently explained" that, "when a function is both contested and relevant, the ALJ must perform a function-by-function evaluation explaining how the facts support and bridge to the conclusions in the RFC[.]" (Id. (citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 388-89 (4th Cir. 2021)).) According to Plaintiff, her abilities to stand and walk

both qualify as "contested" and "relevant." (Id. at 9.)  Plaintiff thus deems the above-described errors by the ALJ "very harmful," because "a more restrictive RFC . . . likely would have . . . relegated [Plaintiff] to the performance of sedentary work, which[,] given her high school education, past medium work as a home attendant and restriction to unskilled work[,] would have directed a finding of 'disabled' per the [Medical-Vocational Guidelines] as of her 50th birthday." (Id. at 9 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.14).)  Plaintiff's contentions miss the mark.

RFC measures the most a claimant can do despite any physical and mental limitations.  Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a).  An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain.  See Hines, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b).  The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy).  See 20 C.F.R. §§ 404.1567, 416.967.  Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level.  See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination.  See Reid v. Commissioner of Soc. Sec., 769 F.3d

861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing [RFC] in Initial Claims, 1996 WL 374184, at *1 (July 2, 1994) ("SSR 96-8p").

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio, 780 F.3d at 636-37. Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record,

11

or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, the ALJ did not perform a function-by-function analysis of Plaintiff's abilities to stand and walk (see Tr. 19-21); however, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and her findings that Plaintiff's inflammatory arthritis, Raynaud's syndrome, diabetes mellitus with peripheral neuropathy, and undifferentiated connective tissue disease ("UCTD") (A) qualified as severe (see Tr. 16), but (B) did not cause standing and walking limitations greater than those reflected in the RFC (see Tr. 19).

To begin, the ALJ's discussion of Plaintiff's subjective symptom reports explains the ALJ's RFC findings with regard to standing and walking. The ALJ expressly acknowledged Plaintiff's testimony "that she stopped working because of pain in her hands and feet, which made her unable to tolerate the physical aspects of her job" (Tr. 19; see also Tr. 40), as well as "that pain in her feet limits her ability to stand[ and] . . . that she could stand less than five minutes" (Tr. 20; see also Tr. 41). However, the ALJ also noted "that [Plaintiff] does not use any type of assistive device" (Tr. 20; see also Tr. 42), and found that her "statements

concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (Tr. 20; see also id. ("The medical evidence of record indicates [Plaintiff] is not as limited as alleged.")), a finding which Plaintiff did not challenge (see Docket Entries 14, 17).

The ALJ's evaluation of the opinion evidence additionally supports the standing and walking limitations in the RFC. In that regard, the ALJ found "partially persuasive" (Tr. 21) the opinions of the state agency medical consultants that Plaintiff remained capable of a full range of medium work during the period between her alleged onset date and her date last insured ("DLI") for DIB (January 1, 2016, to December 31, 2016) (see Tr. 59-60, 82), and light work with additional postural, manipulative, and environmental restrictions as of Plaintiff's SSI application date (February 8, 2018) (see Tr. 69-71, 92-94). The ALJ explained why she found those opinions "partially persuasive" as follows:

> The period prior to the [DLI] reflects less functional limitations; however, during this earlier period, the record does note worsening of blistered areas with some mild erythematous base on feet, legs, arms, and trunk ([(Tr. 352)]. Therefore, the [ALJ] further limits [Plaintiff] to no climbing ladders, ropes, or scaffolds and incorporates occasional operations of hand and foot controls. As of September 1, 2017, the record supports the prior light exertional findings; however, the overall medical evidence does not support the frequent crawling and climbing ladders, ropes, or scaffolds assessed as of February 8, 2018. Treatment notes from April 2017

illustrate numbness and tingling in connection with neuropathy [(Tr. 417-25)]. In January 2018, treatment notes reflect an increase of pain in the wrists, which would make frequent crawling and climbing ladders, ropes, or scaffolds problematic [(Tr. 465)]. Furthermore, subsequent evidence demonstrates hand and feet paranesthesia [sic] [ and] inability to stand for a long time . . . . Accordingly, the [ALJ] incorporates additional limitations: a sit-stand option; occasional crawling; no operation of foot controls, but occasional operation of hand controls; occasional pushing/pulling with the bilateral upper extremities . . . . Despite [Plaintiff]'s complaints of joint swelling and pain in the hands, the record illustrates 5/5 strength and the ability to make a fist bilaterally [(Tr. 760)]; thus, the [ALJ] adopts the prior administrative finding of frequent bilateral fingering and handling []. It is noted that [Plaintiff] struggles in the colder months; thus, to prevent exacerbation of symptoms, [she] should avoid exposure to extreme cold. As a safety precaution, [Plaintiff] should have no more than occasional exposure to vibration.

(Tr. 21 (emphasis added).)

Notably, both consultants found that Plaintiff remained capable of standing and walking each for a total of six hours in an eight-hour workday throughout the entire period they considered. (See Tr. 60, 70, 82, 93.) As the language emphasized above makes clear, the ALJ credited the consultants' opinions that Plaintiff could stand and walk for up to six hours total in a workday, but significantly reduced the time that Plaintiff must stand at one time down to one hour and precluded foot controls (see Tr. 19) to further account for "subsequent evidence demonstrat[ing] hand and feet para[]esthesia[ and an] inability to stand for a long time" (Tr. 21 (emphasis added)).

14

Plaintiff nonetheless attacks "the Commissioner['s] argu[ment] that the ALJ did not err by failing to perform a function by function analysis of [Plaintiff's] ability to stand and walk . . . because the ALJ adopted the [s]tate [a]gency findings of light work, and then added an option to sit for 10 minutes after standing for one hour" on two grounds. (Docket Entry 17 at 1 (citing Docket Entry 16 at 14-15).) First, Plaintiff maintains that the Commissioner's "'argument misunderstands the role of the state agency consultants[, because t]he ALJ is required to balance conflicting evidence and make a determination of disability, not the consultants.'" (Id. (quoting Garner v. Colvin, No. 1:12CV1280, 2015 WL 710781, at *8 (M.D.N.C. Feb. 18, 2015) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Mar. 16, 2015) (Osteen, C.J.), and citing Radford v. Colvin, 734 F.3d 288, 295-96 (4th Cir. 2013), for the proposition that "ALJs cannot engage in analysis by proxy through the [s]tate [a]gency physicians, but must explain the basis for their conclusions in their decisions").)

Garner does not aid Plaintiff's cause. In that case, the plaintiff argued that the ALJ erred by failing to consider whether her intellectual disability met or equaled the criteria of Listing 12.05C. Garner, 2015 WL 710781, at *4. The Court agreed, reasoning as follows:

> [T]he record includes evidence of three separate IQ tests
> for [the p]laintiff . . . . The ALJ failed to mention

15

[two of those] IQ tests in his decision. [The Commissioner] argues that all three IQ tests were considered by the state agency consultants and therefore the ALJ's failure to weigh the tests explicitly was harmless. This argument misunderstands the role of the state agency consultants. The ALJ is required to balance conflicting evidence and make a determination of disability, not the consultants. In doing so, the ALJ is required to discuss relevant evidence that weighs against his decision. The ALJ did not do this here. Consequen[tl]y, the [Court] cannot determine whether the ALJ's decision was supported by substantial evidence because it is impossible to tell what weight, if any, was given to the [two] IQ tests [the ALJ failed to discuss].

Id. at *7-8 (emphasis added) (footnote and internal citations omitted). Thus, in Garner, the Commissioner attempted to justify the ALJ's failure to even acknowledge or discuss Listing 12.05C by relying on the state agency consultants' consideration of the plaintiff's IQ tests, and the Court found that the ALJ should have expressly weighed that relevant evidence. Id. In contrast, here, the Commissioner has made no argument that the consultants' consideration of critical evidence justifies the ALJ's failure to discuss that evidence (see Docket Entry 16); rather, Plaintiff appears to argue simply that the ALJ (and not the consultants) must "'balance conflicting evidence and make a determination of disability'" (Docket Entry 17 at 1 (quoting Garner, 2015 WL 710781, at *8)). As the above-quoted analysis by the ALJ of the consultants' persuasiveness shows, the ALJ did exactly that. (See Tr. 20-21.)

Second, Plaintiff argues that "ALJs cannot be allowed to assign a random value to the number of minutes or hours a claimant

16

can be expected to stand and walk at one time despite their impairments," and that "[t]he ALJ's finding that [Plaintiff] could stand for one hour at a time before needing to sit has no basis in the testimony or the medical opinion evidence." (Docket Entry 17 at 2 (citing, inter alia, Hall v. Berryhill, No. 3:17CV285, 2018 WL 1463702, at *3 (W.D.N.C. Apr. 30, 2018) (unpublished)).) According to Plaintiff, "[t]o hold otherwise, would allow ALJs to assign any random number value to the minutes or hours an individual could perform a task despite admitting (as the ALJ did here (see [Tr.] 20-21)) that the evidence supports a limitation on this function (standing)." (Docket Entry 17 at 3.)

Plaintiff's reliance on Hall falls short. In that case, "the ALJ determined that due to [rheumatoid arthritis ('RA')] and synovitis, which cause[d] the pooling of synovial fluid in [the] plaintiff's lower legs, she needed to elevate her feet 10 inches during the work day." Hall, 2018 WL 1463702, at *2. The plaintiff testified "that relief c[a]me[] with elevation above the waist," id. at *3, and the court agreed with the plaintiff that the ALJ failed to support his 10-inch elevation allowance in the RFC:

> The problem in th[e] record is that the only evidence concerning how high [the] plaintiff must raise her legs comes from [the] plaintiff's own testimony. On the other side of the coin, there is [] no evidence to support the ALJ's determination that [the] plaintiff need only elevate her legs 10 inches, a height that would be under the 12[-]inch limit [] testified to by the [VE]. . . .
>
> [B]oth the ALJ and [the plaintiff] agree that elevation of the legs during the day is necessary. While [the]

> plaintiff's position that relief comes with elevation
> above the waist is only supported by her own testimony,
> the ALJ's position is supported by nothing in the record.

Id. at *2-3 (italics omitted) (underscoring added).

Unlike in Hall, the parties here disagree sharply about whether Plaintiff's impairments cause her to have any limitations in standing and walking.  The state agency consultants opined that Plaintiff remained capable of up to a total of six hours each of standing and walking in an eight-hour workday without placing any limits on how long she could stand or walk at one time (see Tr. 60, 70, 82, 93), and Plaintiff maintained that she could stand for only five minutes at a time (see Tr. 40).  The ALJ expressly considered those widely divergent positions (see Tr. 20-21), accorded only partial credit to the consultants' standing and walking opinions (see Tr. 21), noted that she found Plaintiff's statements not entirely consistent with the medical evidence (see Tr. 20), and fashioned a compromise RFC, i.e., significantly reduced the time Plaintiff could stand at one time down to one hour (see Tr. 19) in recognition of "subsequent evidence demonstrat[ing] hand and feet para[]esthesia[ and an] inability to stand for a long time" (Tr. 21 (emphasis added)).  The Court can easily trace the path of the ALJ's reasoning in that regard.

Moreover, none of Plaintiff's medical providers opined that Plaintiff's impairments necessitated greater limits on how long Plaintiff could stand or walk than the RFC currently reflects (let

18

alone opined that Plaintiff required a sit/stand option), which significantly undermines Plaintiff's argument. See Lamonds v. Berryhill, No. 1:16CV1145, 2017 WL 1906755, at *10 (M.D.N.C. May 9, 2017) (unpublished) ("[T]he ALJ's omission of a sit/stand option from the RFC . . . does not constitute error, because no medical source of record opined that [the p]laintiff required a sit/stand option."), recommendation adopted, slip op. (M.D.N.C. May 24, 2017) (Schroeder, J.); Spicer v. Astrue, No. CIV. 11-3679, 2013 WL 951582, at *14 (D. Minn. Feb. 11, 2013) (unpublished) (rejecting the plaintiff's argument that "ALJ failed to include a sit/stand option at will in the RFC finding," which "[wa]s supported by her testimony that she cannot sustain any posture for very long due to constant pain," where "[n]o physician gave her th[at] restriction" and "the record d[id] not otherwise support a sit/stand at will limitation"), recommendation adopted, 2013 WL 950850 (D. Minn. Mar. 12, 2013) (unpublished).

Furthermore, the ALJ's discussion of the medical evidence explains the ALJ's standing and walking limitations. In that regard, the ALJ noted that:

- "[Plaintiff] does not use any type of assistive device." (Tr. 20);

- "On examination of the musculoskeletal, [Plaintiff] generally exhibits full range of motion." (Id. (internal citation omitted));

- "The records reflect improvement with treatment. In October 2019, [Plaintiff] had an overall unremarkable exam of the hands with no signs of

19

synovitis or arthritis, which was noted as an improvement on comparison with prior [ultrasound] in 2017." (Id. (internal citation omitted)); and

- "In April 2017, [Plaintiff was] diagnosed with peripheral neuropathy; however, she exhibited [normal] sensation to light touch, [and] normal muscle bulk, tone, and strength." (Id. (internal citation omitted)).

In addition, by pointing to record evidence Plaintiff believes supports greater limitations on her abilities to stand and walk, she misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's findings regarding Plaintiff's abilities to stand and walk, and not whether other record evidence weighs against those findings, see Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Finally, as the Commissioner argues, "[t]he present case is distinguishable from Dowling because[,] in that case, the claimant's treating physician opined that she could not even sit for two hours, and the ALJ failed to properly consider the claimant's ability to sit." (Docket Entry 16 at 15 n.5 (citing

20

<u>Dowling</u>, 986 F.3d at 384, 389).)  In contrast, "no doctor here opined that Plaintiff was unable to perform the requisite [six] hours of standing and/or walking[; r]ather, all of the opining doctors agreed that [Plaintiff] could (Tr. 59-60, 69-71, 82, 93-95), and the AlJ assessed even greater limitations with a sit-stand option (Tr. 19, 21)."  (Docket Entry 16 at 15 n.5.)

In sum, Plaintiff's first issue on review fails to warrant relief.

## 2. <u>Mascio</u>

In Plaintiff's second and final assignment of error, she asserts that "[t]he ALJ's decision violates *Mascio*."  (Docket Entry 14 at 13 (bold font omitted).)  In particular, Plaintiff maintains that, "[d]espite acknowledging that [Plaintiff's] pain interfered with her ability to do things, was frustrating and caused her to be depressed and have a diminished ability to concentrate, when assessing the RFC, the ALJ only included the following mental limitations: '[Plaintiff] is further restricted to simple, routine tasks with few changes in a routine work setting.'" (<u>Id.</u> (quoting Tr. 19).)  According to Plaintiff, "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace [("CPP")] by restricting the hypothetical question to simple, routine tasks or unskilled work[, because] . . . the ability to perform simple tasks differs from the ability to stay on task, and o]nly the latter limitation would account for a claimant's

21

limitation in [CPP].'" (Id. at 14 (quoting Mascio, 780 F.3d at 638).) Additionally, Plaintiff argues that "including a restriction for work involving simple, routine, repetitive tasks ('SRRTs') involving 'few changes' without more, does not account for difficulties with CPP." (Id. (citing Jones v. Berryhill, No. 1:17CV267, 2018 WL 3037433, at *3 (W.D.N.C. Jun. 19, 2018) (unpublished), and Hagedorn v. Colvin, No. 2:12CV85, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (unpublished)).) Those arguments lack merit.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]," Mascio, 780 F.3d at 638. However, as the Fourth Circuit recently affirmed, Mascio held "that an ALJ cannot summarily 'account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work,' . . . [b]ut did not impose a categorical rule that requires an ALJ to always include moderate limitations in [CPP] as a specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (emphasis added). As a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to

22

> simple, routine, unskilled work where the record supports
> this conclusion, either through physician testimony,
> medical source statements, consultative examinations, or
> other evidence that is sufficiently evident to the
> reviewing court.

Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added). Here, the ALJ's decision provides a sufficient explanation as to why the RFC's restrictions to "simple, routine tasks with few changes in a routine work setting" (Tr. 19) adequately accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ's consideration of Plaintiff's subjective symptom reports helps to explain why the limitation to simple routine tasks and few changes (see Tr. 19) accounts for Plaintiff's moderate deficit in CPP (see Tr. 18). In that regard, the ALJ acknowledged that Plaintiff "reported an in ability [sic] to do things because of being in so much pain" and "being easily frustrated" (id. (citing Tr. 603)), but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (Tr. 20; see also id. ("The medical evidence of record indicates [Plaintiff] is not as limited as alleged.")), a finding unchallenged by Plaintiff (see Docket Entries 14, 17). Furthermore, the ALJ pointed out at step three of

the SEP that, in Plaintiff's activities of daily living, she remained able to maintain sufficient concentration to "finish what she start[ed]." (Tr. 18.)

Second, in finding Plaintiff moderately limited in CPP (<u>see id.</u>), the ALJ appeared to focus more on the impact that Plaintiff's <u>physical pain</u> had on her ability to concentrate than on any adverse effects of her major depressive disorder:

> With regard to [CPP], [Plaintiff] has a moderate limitation. [Plaintiff] reported an in ability [sic] to do things <u>because of being in so much pain</u> [(Tr. 603)]. She further reported being easily frustrated.

(<u>Id.</u> (emphasis added).) Additionally, the ALJ explained that Plaintiff's testimony indicated that her inability to work stemmed from pain-based impairment of her "toler[ance for] the <u>physical</u> aspects of her job" (Tr. 19 (emphasis added)), not of her mental functioning (<u>see id.</u>). The ALJ thus gave Plaintiff the benefit of the doubt in taking her <u>physical pain</u>, as well as her mental symptoms, into account in finding her moderately limited in CPP and imposing restrictions to "simple routine tasks with few changes in a routine work setting" (Tr. 19). <u>See</u> <u>Burger v. Colvin</u>, No. 7:14CV190, 2015 WL 5347065, at *14-15 (W.D. Va. Sept. 14, 2015) (unpublished) ("The ALJ appeared to just give [the plaintiff] the benefit of the doubt regarding th[e moderate CPP] limitation based on his testimony. Thus, this is not a situation like <i>Mascio</i>, where the ALJ summarily concluded that a limitation of simple, unskilled work accounts for the claimant's moderate impairment in [CPP] with

24

no further analysis or consideration. Rather, the medical evidence supports the conclusion that, despite [the plaintiff's] moderate limitation in {CPP], [he] is capable of performing tasks that involve only short simple instructions . . . .").

Moreover, a neighboring district court recently found that an ALJ adequately accounted under <u>Mascio</u> for the plaintiff's <u>physical pain-based</u> concentration difficulties by finding moderate limitation in CPP <u>and</u> by including physical limitations in the RFC:

> [T]he ALJ assigned [the p]laintiff a moderate limitation in CPP at [s]tep [t]hree. But, in doing so, the ALJ attributed this moderate limitation in CPP to the pain [the p]laintiff feels from his *physical* impairments . . . . [T]he ALJ identified physical pain as the basis of [the p]laintiff's difficulties in CPP, and <u>he accounted for [the p]laintiff's physical pain in the RFC . . . [by including] sitting, standing, reaching, and other physical limitations as described in the RFC</u>. . . . Therefore, <u>the ALJ adequately accounted for [the p]laintiff's physical limitations and pain in his RFC, and by doing so, also accounted for [the p]laintiff's limitations in CPP</u>.

<u>Green v. Berryhill</u>, No. 3:17CV482, 2019 WL 1331754, at *5 (W.D.N.C. Mar. 25, 2019) (unpublished) (italics in original) (underscoring added); <u>see also</u> <u>Wilhelm v. Berryhill</u>, No. 5:17CV138, 2018 WL 4705562, at *4 (W.D.N.C. Sept. 29, 2018) (unpublished) (holding that, where "ALJ found that [the p]laintiff's moderate difficulties in CPP were due to depression in combination with chronic pain[,] . . . [t]he ALJ accounted for [the p]laintiff's chronic pain in his RFC by requiring that [he] have a sit/stand option in work and the ability to change position twice per hour"). Similarly, the ALJ

here not only found moderate limitation in CPP (see Tr. 18), but also included limitations on lifting/carrying, standing, climbing, and manipulative movements in the RFC to account for Plaintiff's pain (see Tr. 19), which (in turn) adequately addressed Plaintiff's moderate limitation in CPP.

Lastly, the ALJ's reasoning in this case coheres with the record. Plaintiff did not list a mental impairment among her allegedly disabling conditions on her Disability Report (see Tr. 227), and neither Plaintiff nor her boyfriend discussed any mental symptoms in Function Reports (see Tr. 238, 241-48, 257-64; see also Tr. 246, 262 (not checking "Concentration" box in response to question asking responder to "[c]heck any of the following items that [Plaintiff's] illnesses, injuries, or conditions affect" and endorsing difficulty in "Completing Tasks" caused by "pain" and "dropping" things). Although Plaintiff indicated on a Disability Report in connection with her request for reconsideration that, "when her pain [wa]s high," she had "mood swings[, ] crying spells[,] . . . difficulty completing tasks and concentrating on tasks at hand" (Tr. 273 (emphasis added)), in a Report of Contact in response to Plaintiff's above-quoted, first allegation of mental symptoms, Plaintiff denied any history of mental health treatment and "affirm[ed] that [her] crying spells and mood swings [we]re second[ary] to physical issues," "report[ed] that she ha[d] no [mental health treatment] plans," and indicated that she "[o]nly

26

experience[d] mood issues with pain." (Tr. 276.)  As a result, the state agency consultants neither assessed Plaintiff with a mental medically determinable impairment nor determined a mental RFC. (See Tr. 54-98.)  In addition, Plaintiff first sought mental health treatment on April 1, 2019 (see Tr. 603-10), and the record reflects only four office visits before the ALJ issued her decision (see Tr. 602-15, 752-57, 762-65).  Such circumstances explain why the ALJ "restrict[ed Plaintiff] to simple, routine tasks with few changes in a routine work setting" to account for "subsequent evidence demonstat[ing] . . . diminished interest in activities with depressed mood[] and diminished ability to think or concentrate" arising out of Plaintiff's pain (Tr. 21 (emphasis added)).

Put simply, Plaintiff's second and final assignment of error fails to establish prejudicial error under Mascio.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 13) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 15)

be granted, and that this action be dismissed with prejudice.


                              /s/ L. Patrick Auld
                         **L. Patrick Auld**
                 **United States Magistrate Judge**


February 4, 2022

28